IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,       )
                                )
                Plaintiff,      )
                                )
        v.                      )       Nos. 3:24-CR-84-KAC-DCP
                                )            3:19-CR-02-KAC-DCP
                                )
KENNETH FRANCIS LEE,            )
                                )
                Defendant.      )

**ORDER OF DETENTION**

This case came before the Court on July 22, 2025, for a detention hearing to determine

Defendant's release or detention pending change of plea and sentencing in case number 3:24-

CR-84 and pending his revocation hearing in case number 3:19-CR-02.  *See* 18 U.S.C. § 636(b).

Assistant United States Attorney Frank M. Dale, Jr., appeared on behalf of the Government.

Attorney Robert R. Kurtz represented Defendant Kenneth Lee, who was also present. Defendant

Lee is charged with seven counts of wire fraud, conspiracy to commit money laundering, three

counts of tax evasion, and failure to file a tax return [Doc. 1].[1] The Indictment also charges

Defendant's wife Susan Lee with conspiracy to commit money laundering and two counts of

money laundering [*Id*.]. Additionally, Mr. Lee's supervised release following his three-year

prison sentence for 2019 convictions for tax evasion and failure to file a tax return is subject to

---

[1]        Unless otherwise stated, all citations are to case number 3:24-CR-84.

revocation [No. 3:19-CR-02, Doc. 31 p. 1]. He has been detained since his initial appearance on August 14, 2024 [Docs. 10, 24].[2]

On June 23, 2025, Defendant moved for release on conditions, including that he live with his wife and their minor daughter at their rental home; submit to GPS monitoring; permit monthly credit report checks; and avoid all direct or indirect contact with any victim or witness, including any contact with his wife about the case outside of the presence of both of their counsel [Doc. 37 pp. 2–3]. Defendant also proposes employment performing maintenance and upkeep on rental properties for his landlord and friend [*Id*. at 3]. Defendant contends that he is neither a danger, nor a flight risk, and that release would permit him to address medical issues involving "significant hearing loss, ringing in his ears, and vertigo" [*Id*. at 2]. Defendant makes these same arguments in his revocation case and adds that he has been detained for nearly all his guideline range of six to twelve months [No. 3:19-CR-02, Doc. 44 pp. 1, 3–4].

At the detention hearing, the parties agreed that the Defendant must show by clear and convincing evidence that he is unlikely to flee or pose a danger to the community if released.[3] The Government stated that while it is not opposed to Defendant's release generally, it asserts that no conditions exist that will reasonably assure the safety of the community from Defendant's further financial fraud. Defendant presented the testimony of his adult daughter Savannah Lee, who agreed that Defendant could live with her and that she would serve as his third-party custodian. The Government presented a copy of a July 3, 2025 email from Defendant to

---

[2]      Defendant first appeared on a Petition for Warrant for Offender Under Supervision ("Petition") in case number 3:19-CR-02 on August 26, 2024 [Doc. 32], and he is also detained in that case [Doc. 35].

[3]      The parties agree—and the Court finds—that Rule 32.1(a)(6) applies, incorporating 18 U.S.C. § 3143(a).

Savannah Lee, regarding her assistance in "scheduling a call with Little" and obtaining information from "him" (Little) on protecting Defendant's "crypto" [Exh. 1].[4]

For the reasons set forth below, the Court finds that Defendant shall be detained throughout the remainder of his two pending cases.

## I.  ANALYSIS

The Court typically orders pretrial detention of a defendant only if it finds no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of any person or the community.  18 U.S.C. § 3142(e).  Here, the Government initially sought detention of Defendant pursuant to 18 U.S.C. § 3142(f)(2)(B), arguing that he presents a serious risk of obstruction of justice [*See* Doc. 37 p. 2].[5]  With respect to the release or detention of persons appearing for an alleged violation of probation or supervised release, however, the Court *shall* order that the defendant be detained unless it finds by clear and convincing evidence that

---

[4]      On cross-examination, Ms. Lee explained that "Little" was Attorney Alex Little, whom the family sought to hire to assist Mr. Kurtz in Defendant's criminal case.  When questioned about Defendant's need for a second attorney, Ms. Lee responded that the family wants more people working on the case to help her dad because they want him home.

[5]      In his motion, Defendant argues that he does not pose a serious risk of obstructing or attempting to obstruct justice [Doc. 37 p. 2].  At the detention hearing, however, Defendant conceded that the appropriate standard for the Court's consideration is whether he shows by clear and convincing evidence that he is not likely to pose a danger or a flight risk.  *See* Fed. R. Crim. P. 32.1(a)(6). The undersigned finds Defendant abandoned the issue of whether he presents a serious risk of obstruction of justice by not addressing it at the hearing.  *See United States v. Khatiwada*, No. 3:24-mj-1277, 2024 WL 4906487, at *5 (M.D. Tenn. Nov. 27, 2024) (finding defendant waived or forfeited a challenge to whether a detention hearing is appropriate under § 3142(f)(2) by not specifically challenging government's right to a detention hearing at the hearing or in post-hearing briefs).

         The undersigned notes that although not considered by the Court in ruling on Defendant's present detention issues, a victim letter and attachments [Doc. 40], which Defendant moves to strike [*see* Doc. 44], contain information relating to Defendant's obstruction of justice, and the Court would consider this information if the issue of detention under § 3142(f)(2)(B) was before it.  *See* 18 U.S.C. § 3771(a)(4); *United States v. Marcello*, 370 F. Supp. 2d 745, 750 (N.D. Ill. 2005) (noting the right of victims to be "reasonably heard" at detention hearings "c[an] be satisfied through means other than an oral statement").

3

the defendant is not likely to flee or pose a danger to the safety of others or the community if released. 18 U.S.C. § 3143(a); Fed. R. Crim. P. 32.1(a)(6); *United States v. McIntosh*, No. 02–CR–20049–02, 2012 WL 762614, *1 (E.D. Mich. Mar. 9, 2012) (observing that § 3143(a) "establishes a presumption in favor of detention that is rebuttable only upon the Defendant showing, by clear and convincing evidence, that he or she is not likely to flee or pose a danger to any other person or the community"). The defendant bears the burden of showing that he will not flee or pose a danger to others or the community. Fed. R. Crim. P. 32.1(a)(6). As stated above, the parties agree that this heightened "revocation standard" applies here.

In evaluating whether Defendant presents a danger or a flight risk, the Court considers the factors in 18 U.S.C. § 3142(g). Here, those factors weigh in favor of Defendant's continued detention.

The first factor concerns the nature and circumstances of the charged offenses, "including" whether the defendant is charged with a crime of violence or terrorism or involves a controlled substance, minor victim, firearm, or explosive or destructive device. 18 U.S.C. § 3242(g)(1). Defendant's charges do not fall within any of the listed crimes or circumstances; however, the circumstances of his offenses support detention. Pursuant to his Plea Agreement, Defendant agrees to enter a guilty plea to one count of wire fraud in violation of 18 U.S.C. § 1343 (Count One) and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Eight) [Doc. 38 ¶ 1(a)–(b)].[6] In his plea agreement, Defendant stipulates that from 2019 through 2024, he falsely represented to victims A.S. and J.L. and others that he was "negotiating a large billion-dollar settlement to sell" a business he purportedly owned, and Defendant sought the victims' investment of funds to be used for legal fees to gain the fictional settlement [*Id*. at ¶ 4]. "In exchange, [Defendant] promised the victims, including

---

[6]     Defendant's change of plea hearing is currently scheduled for August 22, 2025.

A.S. and J.L., return of their investment funds along with a percentage of the purported settlement" [*Id*.]. Defendant induced the victims to invest or continue investing in the scheme by providing fabricated documents and telephonic and electronic communications including a breakdown of expected settlement proceeds and a purported email from the purchasing executive [*Id*.]. The victims "invested at least $3.3 million in the supposed settlement" [*Id*.]. Defendant admits that he committed these offenses while on supervised release in case number 3:19-CR-02 "and thus violated the terms of his supervision" [*Id*.].

Defendant's position as "the principal figure in this long-running scheme and [as the one] responsible for the artifice, rather than a mere participant" along with the significant losses to the individual victims weighs in favor of detention. *See United States v. Khatiwada*, No. 3:24-mj-1277, 2024 WL 4906487, at *7 (M.D. Tenn. Nov. 27, 2024) (finding the nature and circumstances supported detention where defendant charged with wire fraud and money laundering created fraudulent invoices and a fake company to defraud his employer of millions of dollars).

The Court next examines the weight of the evidence of Defendant's dangerousness. 18 U.S.C. § 3142(g)(2); *see also United States v. Stone*, 608 F.3d 948 (6th Cir. 2010) (observing that factor (g)(2) "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt"). Defendant argues that he has no history of violence and that "'financial danger' is not a legitimate basis for detention" [No. 3:19-CR-02, Doc. 44 pp. 2–3]. "[S]everal courts have rejected this argument that financial crimes pose no danger to the community." *United States v. Phillips*, No. 3:25-cr-00026, 2025 WL 863648, at *4 (W.D. Ky. Mar. 19, 2025) (citing *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) & *United States v. Tragas*, No. 09-20023-10, 2020 WL 5064383, at *7 (E.D. Mich. Aug. 27, 2020), *aff'd*,

2021 WL 4205168 (6th Cir. Aug. 4, 2021)). Instead, "[t]here is no question that economic crimes have victims and negatively impact the community." *Id.*

Here, Defendant Lee has continued to perpetrate financial crimes on the community over a fifteen-year period (from his initial offenses of wire fraud and money laundering in November 2010), at times while on conditions of release [*See* No. 3:19-CR-02, Doc. 31, Petition, p. 4 (discussing Defendant's fiscal danger to the community from his "pattern of continued criminal conduct of a fiscal nature")]. Moreover, Defendant's financial crimes "involve nothing more than a computer or phone to commit and no prior sentence has stopped him from continuing to commit fraud on the community." *Phillips*, 2025 WL 863648, at *4. Accordingly, the Court finds the weight of the evidence of the Defendant's dangerousness to the community to be great.

The third factor focuses on the Defendant's history and characteristics. *See* 18 U.S.C. § 3142(g)(3). Defendant is fifty-four years old, a life-long resident of the Eastern District of Tennessee,[7] and enjoys close ties with his wife and seven children, most of whom live nearby with their families. Regarding employment, Defendant states that he has a job conducting maintenance and upkeep on forty rental properties belonging to his landlord and friend Nathan Jochen [Doc. 37 p. 3]. Defendant has no history of mental health issues or substance abuse. He reports several health issues. Defendant states he has had hearing loss, ringing in the ears, and vertigo since January 2025 [Doc. 37 p. 2]. Defense counsel proffered that while Defendant had an appointment with an ear, nose, and throat doctor in February, the doctor canceled the appointment, which has not yet been rescheduled. Defense counsel stated that Defendant is also experiencing neuropathy from diabetes and seeks further testing for potential prostate issues. These factors arguably favor release.

---

[7] Defendant's Presentence Report from his 2019 conviction for tax evasion and willful failure to file a tax return reveals he lived in Florida for two years as a child [No. 3:19-CR-02, Doc. 16, SEALED].

6

Other of Defendant's history and characteristics support detention. Regarding his financial resources, the Petition states that based upon the charges, "the extent of monetary funds available to [Defendant] and/or his wife is unknown" [No. 3:19-CR-02, Doc. 31 p. 3]. In his Plea Agreement, Defendant "agrees to forfeit to the United States immediately and voluntarily any and all assets . . . subject to forfeiture . . . which are in the possession or control of the defendant or the defendant's nominees [and] to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture" [Doc. 38 ¶ 10]. Defendant signed the Plea Agreement on June 23, 2025 [*Id.*]. Defendant's July 3, 2025 email to his daughter while detained suggests an attempt to hide assets after he agreed to disclose them [*See* Exh. 1]. Also, Defendant has a history of felony convictions for financial crimes and admits that he committing the conduct underlying the current charges while on supervised release. Defendant's prior and new crimes were committed while he had the same level of family support that he does now, and his current offenses allegedly involve family members. On balance, Defendant's history and characteristics weigh in favor of detention. *See United States v. Sykes*, 453 F. Supp. 3d 1011, 1017 (E.D. Mich. Apr. 13, 2020) ("Given his past criminal conduct . . . and apparent disregard for the terms of his probation, [the defendant's] history and characteristics weigh strongly in favor of detention."), *aff'd,* 2020 WL 4036213 (6th Cir. July 15, 2020).

The final factor looks to the nature and seriousness of the danger that would be posed by the Defendant's release. *See* 18 U.S.C. § 3142(g)(4). The Court finds this factor also supports detention. Defendant continues to endanger the community by committing financial crimes despite serving a prior sentence of probation and a three-year sentence of incarceration. The fact that Defendant committed the instant offenses of wire fraud and conspiracy to commit money laundering while on conditions of release gives the Court no confidence that he would abide by

7

any conditions this Court would impose. *See United States v. Pacheco*, No. 3:21-CR-00022, 2021 WL 5979531, at *1 (E.D. Ky. Dec. 17, 2021) ("[C]ondition effectiveness inherently hinges on a defendant's predicted good faith compliance.").

Defendant argues that there are conditions—credit checks, GPS monitoring, and not discussing the case with his wife outside the presence of counsel—that can alleviate any danger that he may pose. The Court finds that if Defendant lives with his wife, he would be returning to the same residence where he was living when he committed the fraud. Nor does the Court find Defendant's daughter's residence to be appropriate, nor her to be a suitable third-party custodian. The July 3 jail email reveals that Defendant may be soliciting her assistance with hiding assets, and when questioned about this email, Defendant's daughter became somewhat defensive and said her family just wants her father to be home. While the Court does not question Savannah Lee's devotion to her father, it questions whether she would inform the Court if Defendant violated his conditions when that could lead to her father's detention. Regular credit checks provide little protection because the Indictment alleges Defendant used the accounts of his wife and son in his fraudulent transactions [Doc. 1 ¶ 12].

Finally, Defendant argues that the prior AUSA on this case agreed to his release and requested these conditions. Ultimately, however, it is the Court who is tasked with determining the sufficiency of conditions to protect the safety of the community. Defendant Lee fails to carry his burden of showing by clear and convincing evidence that he is not a danger to the community. He has also failed to show that release on the suggested conditions or any conditions would reasonably assure the safety of the community.[8] The Court concludes that no condition or combination of conditions of release exist that could reasonably assure the safety of

---

[8]    In its Amended Pretrial Services Report, dated June 30, 2025, the United States Probation Office recommended that Defendant be detained.

the community, and therefore, the Defendant is **ORDERED DETAINED** pending the resolution of both of his cases.[9]

For the reasons discussed herein, the Court **ORDERS** as follows:

(1) Defendant's motions for release on conditions [No. 3:24-CR-84, **Doc. 37**; No. 3:19-CR-02, **Doc. 44**] are **DENIED**;

(2) Defendant Lee is **ORDERED DETAINED** pending further proceedings in case number 3:24-CR-84 and his revocation hearing in case number 3:19-CR-02;

(3) Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(4) Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel; and

(5) On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[9] The Court notes that Defendant's 2019 Presentence Report indicates his hearing issues have been ongoing since at least 2019 and that he was receiving treatment from a health care provider in the community [No. 3:19-CR-02, Doc. 16, ¶ 45 SEALED]. The Court heard no evidence that Defendant could not obtain medical treatment while detained, only that it would be easier to do so on release. Defendant may seek a medical furlough if he is not able to obtain medical treatment while detained.